Filed 7/21/25  P. v. Jackson CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAMION JACKSON,<br><br>    Defendant and Appellant. | 2d Crim. No. B338448<br>(Super. Ct. No. 2003004442)<br>(Ventura County) |

Damion Jackson appeals the denial of his petition for resentencing under Penal Code section 1172.6.[1]  He contends the trial court erred in:  (1) summarily denying his petition because nothing in the record of conviction renders him ineligible for relief as a matter of law; and (2) denying his petition without fully setting forth its reasons as required in section 1172.6, subdivision (c).  We will affirm.

---

[1] Undesignated statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND[2]

"On the evening of January 31, 2003, Edgar Guerrero and Peter Torres were in a car parked near the 'bridge' area in Oxnard when [appellant] approached them and told them he wanted them to assist him in robbing Mark Droney, a drug dealer who sold methamphetamine from his house on nearby Geronimo Drive in Oxnard. Guerrero and Torres knew [appellant] as 'Peanut,' the moniker he used as a member of the 'AWK' tagging crew. . . .

"[Appellant] told Guerrero and Torres he needed them to provide a distraction by weighing marijuana inside Droney's house while [appellant] went to the bathroom. [Appellant] told them he planned to return from the bathroom with a gun and steal the drugs from Droney, which he kept in a black leather bag. [Appellant] assured them he would not shoot Droney.

"The following morning, Guerrero left Droney voice messages asking to borrow his scale to weigh marijuana and Torres left a message inquiring about a methamphetamine purchase. Shortly thereafter, [appellant], Guerrero, and Torres arrived together at Droney's house. [Appellant] went to the bathroom while Torres used Droney's scale to weigh marijuana and Droney measured methamphetamine at a desk. [Appellant] returned from the bathroom, pulled out the gun, pointed it at Droney and said, 'Give me your shit' or 'Give me all your stuff.' Droney got up, ran at [appellant], and tried to take the gun from him. During the ensuing struggle, the gun discharged, and

---

[2] We quote from this court's unpublished opinion in *People v. Jackson* (Aug. 28, 2006, B183306) [nonpub. opn.]. We previously granted appellant's unopposed request for judicial notice of the record in his direct appeal. (Evid. Code, § 452.)

Droney fell to the floor.  [Appellant] grabbed something from the desk where Droney had been sitting, and ran from the house.

"At 7:14 a.m., Torres called 911 to report that Droney had been shot.  He identified himself to the 911 dispatcher as 'David,' and waited on the telephone until the police arrived.  The police arrived shortly thereafter and separated Guerrero and Torres.  Droney was found lying on the floor.  Oxnard Police Officer Jessica Hines asked Droney what had happened, and he told her he had been shot.  When asked who had shot him, Droney said he did not know and that he was in pain.

"Officer Hines accompanied Droney to the hospital, where doctors told her he had suffered a life-threatening injury and that he might not survive surgery.  The officer conveyed this to Droney, and asked him again who had shot him.  Droney replied that 'Peanut' had shot him when he tried to fight back.  Approximately an hour later, Droney reiterated that an individual he knew only as 'Peanut' had pulled a gun and shot him.

"Torres gave a tape-recorded interview at the scene of the crime.  He initially identified himself as David Santiago, and refused to identify the shooter or provide any other information because he did not want to be labeled a 'rat.'  Torres subsequently admitted his true name after the interviewing officer found it tattooed on Torres's body.  In later interviews, Torres said that Peanut was the shooter, and provided an accurate physical description of [appellant]. . . .

"Guerrero also gave a taped interview at the scene.  Guerrero was initially evasive because he too was afraid of being labeled a 'rat.'  He did, however, identify the shooter as 'Peanut,' and gave a physical description that matched [appellant's].  In a subsequent interview at the police station, Guerrero was again

3

evasive and stated his concern about being harmed for giving information about the shooter. One or two days later, however, Guerrero identified [appellant] as the shooter from a photographic lineup.

"Inside Droney's house, the police found several baggies of marijuana, three marijuana plants, drug paraphernalia for ingesting marijuana and methamphetamine, a scale, and a 'pay-owe' sheet containing various names with corresponding dollar amounts. No shell casings or a black bag containing drugs or money were found. . . . None of [appellant's] prints were found at the scene or in Guerrero's car, but latent prints found on the bathroom doorknob and sink were matched to Guerrero and Torres, respectively.

"The autopsy revealed that Droney died from a single gunshot to the abdomen. A forensics expert determined that the bullet recovered from Droney's body was either a .380 automatic or a 9-millimeter caliber bullet from a semiautomatic firearm, although no such weapon was ever identified or linked to [appellant]. [¶] . . . [¶]

"[Appellant's] evidence highlighted the inconsistencies in the numerous statements Guerrero and Torres made to the police, as well as the indications of untruthfulness during their polygraph examinations. Most notably, both men had initially indicated that they were unable to identify the shooter, were evasive, and denied or downplayed any involvement in the crime. . . ." (*People v. Jackson*, *supra*, B183306.)

A jury convicted appellant of first degree murder (§§ 187, subd. (a), 189) and first degree residential robbery (§ 211). The jury found true allegations appellant committed the murder in the perpetration or attempted perpetration of robbery (§ 190.2, subd. (a)(17)), and that he personally used a firearm in the

4

commission of both offenses (§ 12022.53, subd. (b)). The jury found not true allegations appellant personally and intentionally used and discharged a firearm causing death (*id.*, subd. (d)) and personally and intentionally discharged a firearm (*id.*, subd. (c)).

The court sentenced appellant to life without the possibility of parole plus ten years. We affirmed the judgment in *People v. Jackson*, *supra*, B183306.

In 2023, appellant filed a form petition requesting section 1172.6 relief. Appellant failed to check the box indicating he could not presently be convicted of murder because of changes to sections 188 or 189, effective January 1, 2019. Thus, his petition was facially insufficient. Nevertheless, we will consider his contentions.

The court appointed counsel, and the People filed an opposition. Appellant did not file a reply. Both parties submitted at the hearing without argument. The court ruled as follows: "Based on the review of the relevant materials, it appears that this defendant is not eligible for the relief that he is requesting, and his request is denied."

DISCUSSION

*Legal Principles*

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) narrowed the felony murder rule's scope. The bill added section 189, subdivision (e) (Stats. 2018, ch. 1015, § 3; see *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*)), which provides that defendants are liable on a felony murder theory only if they (1) were the actual killer; (2) were not the actual killer but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in committing first degree murder; or (3) were a

5

major participant in the underlying felony and acted with reckless indifference to human life.  (See *Strong*, at p. 708.)

Senate Bill 1437 also established a procedure for defendants convicted under prior law to petition for relief. (§ 1172.6.)  The process "begins with a facially valid petition that entitles petitioner to counsel, continues with asking whether petitioner has made a prima facie case for relief, and, if so, proceeds to an evidentiary hearing on the ultimate question of whether petitioner should be resentenced."  (*People v. Patton* (2025) 17 Cal.5th 549, 604 (*Patton*); § 1172.6, subds. (a)-(d).)

The prima facie inquiry is "'limited.'"  (*Patton*, *supra*, 17 Cal.5th at p. 562.)  "It is not, however, simply duplicative of the facial inquiry."  (*Ibid.*, footnote omitted.)  "A petition's facial validity . . . is readily established by recitation of section 1172.6's requirements."  (*Ibid.*)  The prima facie inquiry "is more demanding . . . ."  (*Id.* at p. 566.)  As in the analogous habeas corpus context, "'"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if [those] factual allegations were proved.  If so, the court must issue an order to show cause."'"  (*Id.* at p. 563.)

"'"However, if the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.'"'"  (*Patton*, *supra*, 17 Cal.5th at p. 563.)  Conclusory allegations "are particularly subject to refutation by the record of conviction."  (*Id.* at p. 564.)  The Court has cautioned that "'[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in "factfinding involving the weighing of evidence or the exercise of discretion."'"  (*Id.* at p. 563.)  "If the

6

petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*People v. Curiel* (2023) 15 Cal.5th 433, 450; see also *Strong, supra*, 13 Cal.5th at p. 708.)

"We review de novo a trial court's denial of a section 1172.6 petition at the prima facie stage." (*People v. Bodely* (2023) 95 Cal.App.5th 1193, 1200.)

*Analysis*

Appellant is ineligible for section 1172.6 relief because the jury convicted him as the actual killer. Thus, the trial court properly denied his petition at the prima facie stage.

The information charged only appellant, who was the only person tried. The prosecution argued for murder liability solely on a felony murder theory and asserted appellant "shot and killed Mark Droney . . . ." Likewise, the court's instruction defining murder addressed only felony murder.[3] Appellant's felony murder conviction did not itself require a finding he was the actual killer. However, viewed alongside the remaining record of conviction, the personal use true findings demonstrate the jury

---

[3] Pursuant to CALJIC No. 8.10, the court instructed:

"Defendant is accused in Count 1 of having committed the crime of murder, a violation of Section 187 of the Penal Code.

Every person who unlawfully kills a human being during the commission or attempted commission of a robbery, is guilty of the crime of murder in violation of Penal Code Section 187. A killing is unlawful if it was neither justifiable nor excusable.

In order to prove this crime, each of the following elements must be proved:
1. A human being was killed;
2. The killing was unlawful; and
3. The killing occurred during the commission or attempted commission of a robbery."

convicted appellant as the actual killer. (*Patton*, *supra*, 17 Cal.5th at p. 557 [conclusory allegations in response to a record of conviction demonstrating the conviction was under a still-valid theory do not constitute a prima facie showing].)

The jury found true the enhancements that appellant, during the commission of both the robbery and murder, "personally used a firearm, to wit: a handgun . . . ." Pursuant to the court's instruction, "'personally used a firearm'" meant appellant "must have intentionally displayed a firearm in a menacing manner, intentionally fired it, or intentionally struck or hit a human being with it." (CALJIC No. 17.19.) A personal use true finding does leave room for the theoretical possibility that a felony murder defendant was not the actual killer. For example, "[i]f two robbers display guns to intimidate robbery victims and one shoots and kills a victim, both robbers could be found to have personally used a gun in the robbery and the felony murder, even though only one is the actual killer." (*People v. Jones* (2003) 30 Cal.4th 1084, 1120.) However, the record of conviction does not support any such possibility here.

In closing argument, appellant's counsel acknowledged that "clearly someone shot Mark Droney and he died as a result of that." In line with the court's aiding and abetting and special circumstance instructions (CALJIC Nos. 3.01, 8.80.1), counsel did address the possibility appellant aided and abetted the robbery without being the actual killer. But counsel did not contend appellant somehow personally used a firearm without shooting Droney. Nor did she argue both appellant and a second robber displayed a firearm. Instead, counsel cast Torres as the "actual killer" and argued Torres "pull[ed] out his gun and . . . trie[d] to rob Mr. Droney . . . ." By convicting appellant of murder and finding true the personal use enhancements, the jury rejected

8

these arguments and identified appellant as the gun wielder and actual killer.

The verdicts and the prosecutor's argument point to the same conclusion. Because the shooting may have been accidental, the prosecutor argued he had not proven beyond a reasonable doubt the "intentional firearm allegations" (§ 12022.53, subds. (c)-(d)) but had proven the personal use firearm allegation (§ 12022.53, subd. (b)). The jury's verdicts align with this argument. We cannot believe this alignment was merely coincidental. (Cf. *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1247-1248 ["We conclude no reasonable juror who found that Beaudreaux personally discharged his gun and caused great bodily injury and death might have believed [former codefendant] personally did the same thing, with Beaudreaux only indirectly involved in the fatal act, but liable for it nonetheless."].)

Prima facie denial of appellant's petition does not entail factfinding involving the weighing of evidence or exercise of discretion. Appellant's "petition contains only a checkbox declaration with legal conclusions, he submitted no reply, and he made no argument when invited to do so at the prima facie hearing." (*Patton, supra*, 17 Cal.5th at p. 569.) "[A]bsent specific facts, . . . mere latent, speculative possibilities" do not create a dispute regarding a conviction's basis. (*Id*. at p. 567)

During her opening, appellant's trial counsel stated: "[T]he bottom line, so to speak, at the end of this trial is going to be this question, who shot Mark Droney?" The record of conviction shows the jury's answer was appellant.

Both parties rely on *People v. Garrison* (2021) 73 Cal.App.5th 735. There, the court concluded that "[b]y admitting that he personally used a weapon, Garrison necessarily admitted

9

that he was the actual killer simply because there was no evidence either at the preliminary hearing or at the section 1170.95, subdivision (d)(3) hearing supporting any other scenario." (*Id*. at p. 743.[4]) Appellant asserts *Garrison* "supports the contention that appellant should have been issued an evidentiary hearing before the trial court could find him ineligible based on his firearm enhancement." But, unlike appellant's case, *Garrison* did not involve a denial at the prima facie stage. (*Id*. at pp. 747-748 ["[T]his case involves a section 1170.95, subdivision (d)(3) hearing, not a prima facie inquiry . . ."].) "A case is not authority for propositions not considered." (*People v. Chavez* (2020) 54 Cal.App.5th 477, 480.)

Finally, given our conclusion that appellant was convicted as the actual killer, any error the trial court committed in failing to articulate its reasons for denying the petition was harmless under any standard. (See *People v. Hurtado* (2023) 89 Cal.App.5th 887, 893; § 1172.6, subd. (c).)

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

CODY, J.

We concur:

GILBERT, P.J.          YEGAN, J.

---

[4] Assembly Bill No. 200 (Reg. Sess. 2021–2022) renumbered section 1170.95 as section 1172.6. (See Stats. 2022, ch. 58, § 10.)

10

David M. Hirsch, Judge
Superior Court County of Ventura

_____

Keilana Truong, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David E. Madeo and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.